William J. EVERS, Clifford A. Ferguson, Barry L. Smalley, Petitioners-Respondents,†

Roger P. VANDER LOGT, Petitioner-Respondent-Cross-Appellant,

v.

Michael P. SULLIVAN, Stephen Puckett, Molly Sullivan-Olson, Wendy Monfils, Diane Fergot, J. Warden Smith, and Jon Litscher, Respondents-Appellants-Cross-Respondents.

Court of Appeals

*No. 00–0127. Submitted on briefs May 19, 2000.—Decided June 1, 2000.*

## 2000 WI App 144

(Also reported in 615 N.W.2d 680.)

†Petition to review denied.

On behalf of the respondents-appellants-cross-respondents, the cause was submitted on the briefs of *Stan Davis,* assistant attorney general, and *James E. Doyle,* attorney general.

On behalf of the petitioners-respondents, the cause was submitted on the briefs of *William J. Evers* and *Clifford A. Ferguson,* pro se.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Officials of the Department of Corrections appeal a judgment declaring that the department lacks legal authority to transfer the petitioning inmates "to facilities outside of the state of Wisconsin without their consent."[1] The department claims that the trial court erred in concluding that it lacked statutory authority to transfer the inmates to out-of-state facilities. We agree and thus reverse the appealed judgment. The department also claims the trial court erred in not declaring the instant action moot with respect to inmate Evers, and in ordering certain documents to be returned to him. For reasons we discuss below, we decline to address these two claims of error.

---

[1] We will refer to the appellants, collectively, as "the department," and to the respondents as "the inmates."

761

## BACKGROUND

¶ 2.   The inmates filed this action alleging that the department had improperly classified each of them as eligible for incarceration at an out-of-state facility.[2] They requested the circuit court to declare that it would be unlawful for the department to transfer them out of state, and to grant "a permanent injunction that will prohibit the [department] from evaluating, classifying, recommending, or transferring any Wisconsin Inmate out of state for the purpose of incarceration and punishment without the individual[']s freely given consent and permission." The department moved to dismiss for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted.

¶ 3.   The trial court determined that the inmates' claims were "not within the scope of the Inmate Com-

---

[2] The appellants are officials and employees of the Department of Corrections who were named as respondents in a petition for a writ of certiorari filed by four inmates of Wisconsin state prisons. The trial court concluded that the inmates had provided insufficient information regarding the specific decisions they wanted reviewed to permit review on certiorari. But because they had also included a request for a declaratory judgment, the court ruled that the action could proceed as one seeking declaratory relief under WIS. STAT. § 806.04 (1997–98).

We also note that all four of the inmates initially filed notices of cross-appeal, and that one of them remains identified as a cross-appellant in the caption. However, no cross-appeal is presently before us. Inmates Evers and Ferguson voluntarily dismissed their cross-appeals; we previously ordered inmate Smalley's cross-appeal dismissed for failure to comply with WIS. STAT. § 814.29(1m) (1997–98); and inmate Vander Logt failed to timely submit a cross-appellant's brief. We now order Vander Logt's cross-appeal summarily dismissed as well.

plaint Review System," and that no other administrative remedy appeared to be available to them. The court thus declined to dismiss the inmates' action for failure to exhaust administrative remedies.[3] The court also concluded that the inmates had failed to state claims for relief based on (1) federal and state statutes governing the "Interstate Corrections Compact"; (2) the department's lack of authority to contract with the Corrections Corporation of America; and (3) various constitutional theories (cruel and unusual punishment, access to the courts, ex post facto laws, extradition, and slavery). However, in what it deemed "the crux of this case," the court concluded that, under WIS. STAT. § 301.21 (1997–98),[4] the department was authorized to "*contract* for the transfer and confinement of inmates in [its] custody" at out-of-state facilities, but that it lacked statutory authority to actually transfer the inmates to those locations. The court also determined that, because the inmates' sole surviving cause of action "is based on purely legal considerations and involves no factual determinations," its decision on the motion, in effect, resolved the issue in favor of the inmates.

¶ 4. Accordingly, the court entered a judgment declaring that the department "lack[s] the legal authority to transfer these petitioners to facilities outside the State of Wisconsin without their consent." It ordered the department not to transfer the two inmates who had not yet been transferred out of state, and to return two others, who were then incarcerated

---

[3] The department does not challenge in this appeal the trial court's ruling that the inmates had not failed to exhaust administrative remedies.

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

in out-of-state facilities, to a Wisconsin correctional institution within thirty days of its order.[5] The department appeals this judgment, as well as two interlocutory orders.[6]

## ANALYSIS

¶ 5.  A trial court's ruling on a motion to dismiss for failure to state a claim, as well as its interpretation of a statute, present questions of law which we review de novo, and thus we owe no deference to the trial court's conclusions. *See Atkinson v. Everbrite, Inc.*, 224 Wis. 2d 724, 727, 592 N.W.2d 299 (Ct. App. 1999); *Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). Our chief objective when interpreting a statute is to ascertain the intent of the legislature. *See Truttschel*, 208 Wis. 2d at 365. We first look to the plain language of the statute to discern the legislature's intent. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). If the plain language of the statute clearly sets forth the legislative intent, we apply the statute accordingly to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the statute's language is ambiguous, however, we will consult its legislative history, scope,

---

[5] On the department's motion, this court stayed the portion of the trial court's judgment requiring the return of the two inmates to Wisconsin pending resolution of the appeal.

[6] The appeal of a final judgment or order "brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon." WIS. STAT. RULE 809.10(4).

context and purpose in order to apply the statute consistent with the legislature's intent. *See id.*

¶ 6.   Thus, we begin by examining the language of the statute. WISCONSIN STAT. § 301.21 provides, in relevant part, as follows:

> (1m)(a)   The department may enter into one or more contracts with another state or a political subdivision of another state for the transfer and confinement in that state of prisoners who have been committed to the custody of the department. . . .
>
> . . . .
>
> (2m)(a)   The department may enter into one or more contracts with a private person for the transfer and confinement in another state of prisoners who have been committed to the custody of the department. . . .
>
> . . . .
>
> (6)   Contracts under this section are subject to approval under s. 302.26,[7] except that for purposes of s. 302.26 this section constitutes legislative approval of contracts between the department and the state of Minnesota.

¶ 7.   Neither party to this appeal asserts that the statute is ambiguous, although they do disagree as to its proper interpretation. The department claims that the legislature's grant of authority to contract for the transfer and confinement of Wisconsin inmates at public and private facilities in other states carries with it

---

[7] WISCONSIN STAT. § 302.26 provides that "[i]f a contract under s. 301.21 . . . involves the transfer of more than 10 prisoners in any fiscal year to any one state or to any one political subdivision of another state, the contract may be entered into only if it is approved by the legislature by law or by the joint committee on finance."

the authority to do the thing contracted for, and that any other reading of the statute is unreasonable. The inmates, on the other hand, urge us to interpret the statute as did the trial court, and to conclude that the department may indeed enter into such contracts, but that absent the consent of an individual inmate, the department may not effect an out-of-state transfer. They claim that this result is mandated by the fact that they have not been "committed to the custody of the department," but have been sentenced to "the Wisconsin state prisons," in which they have the right to remain during the terms of their sentences. *See, e.g.*, WIS. STAT. §§ 973.013(1)(a) and 973.02.

■

¶ 8.  A statute is not ambiguous simply because parties disagree as to its meaning or proper application; rather, the determination of whether ambiguity exists is a question of law. *See State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). We will find a statute to be ambiguous only if it is capable of being understood by reasonably well-informed persons in two or more different ways. *See id.* We conclude that WIS. STAT. § 301.21 presents no ambiguity regarding the present issue.

¶ 9.  The language of the statute plainly evinces a legislative intent to authorize the department to both enter into contracts with entities operating correctional facilities in other states, and to then transfer Wisconsin inmates for incarceration at those facilities pursuant to those contracts. The statute lists numerous matters that must be addressed in the authorized contracts, including the "delivery and retaking of inmates," and the waiver of extradition between Wisconsin and "the state to which the prisoners are transferred." *See* WIS. STAT. § 301.21(1m)(a)4 and 5.

Additionally, the statute directs the parole commission to conduct hearings "to which an inmate confined under this contract may be entitled" according to rules established by the department. *See* § 301.21(1m)(c). In short, there is simply no reasonable way to read these and other provisions of § 301.21 without concluding that the legislature envisioned that the department would indeed transfer prisoners out of state under the authorized contracts.

¶ 10. The phrases quoted above show that the legislature clearly contemplated that the department would incarcerate some "inmates" or "prisoners" in other states under the authorized contracts. Neither WIS. STAT. § 301.21, nor any other statute cited by the inmates, limits the department's authority to select inmates for transfer out of state, or restricts the department to transfer to out-of-state facilities only those inmates who consent to be transferred. The legislature did impose a requirement for final approval by the legislature or its joint finance committee for all but the smallest contracts with out-of-state facilities in any given fiscal year. *See* WIS. STAT. §§ 301.21(6) and 302.26.[8] Had the legislature wished to restrict the department's authority to implement the contracts authorized under § 301.21, or to limit its authority to the transfer of "volunteers" only, it could easily have said so, just as it imposed the fiscal review and approval requirement for larger contracts. We will not read into § 301.21 a restriction on the department's authority to transfer and incarcerate in other states those inmates which it deems appropriate for transfer under its contracts with out-of-state institutions.[9]

---

[8] See footnote 7, above.

[9] Although our interpretation of WIS. STAT. § 301.21 rests on a reading of its plain language, we note that since enactment of

¶ 11.   We turn now to the arguments advanced by the inmates in support of the trial court's conclusion that the department lacked statutory authority to transfer them to out-of-state facilities. They contend that because several sentencing statutes,[10] and indeed, their own judgments of conviction, provide that they are "sentenced to the Wisconsin state prisons," WIS. STAT. § 301.21 cannot be read to grant the department authority to place them other than in those institutions identified in WIS. STAT. § 302.01, all of which are located in Wisconsin. The inmates note, as did the trial court, that WIS. STAT. § 302.18(1) authorizes the department to transfer "inmates of a prison" to "another prison," but that out-of-state correctional facilities are not, by definition, "prisons." *Cf. State ex rel. Speener v.*

---

the statute, the department has transferred hundreds of Wisconsin inmates for incarceration at facilities located in several other states, under contracts which have been approved and funded by the legislature or its joint finance committee. We agree with the department that the legislature's acquiescence in its actions provides a strong indication that the legislature intended to not only authorize it to execute contracts under § 301.21, but to implement them as well. *See Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 733, 281 N.W.2d 94 (1979), *aff'd*, 447 U.S. 207 (1980) (explaining that "[l]ong-standing administrative construction of a statute is accorded great weight in the determination of legislative intent because the legislature is presumed to have acquiesced in that construction if it has not amended the statute"); *see also State v. Sample*, 215 Wis. 2d 487, 508–09, 573 N.W.2d 187 (1998) (Abrahamson, C.J., concurring) (" 'When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clean the words may appear on 'superficial examination.' ") (citation omitted).

[10] *See, e.g.,* WIS. STAT. §§ 973.013(1)(a), 973.02 and 973.15(1).

*Gudmanson*, 2000 WI App 78, 234 Wis. 2d 461, 610 N.W.2d 136. And, because other provisions of § 302.18 grant or refer to specific transfer authority in certain circumstances, the inmates claim that the legislature's failure to likewise spell out the department's authority to effect inmate transfers to out-of-state facilities is fatal to the department's position on appeal. We disagree.

¶ 12. We read the provisions in WIS. STAT. ch. 973 which refer to sentences "to the Wisconsin state prisons" as simply identifying the initial place of imprisonment for those who receive sentences of more than one year, thereby differentiating sentences of less than one year, which "shall be to the county jail." *See* WIS. STAT. § 973.02. By so providing, the legislature has allocated to the state the responsibility for incarcerating persons sentenced to serve more than one year, and to the counties the responsibility for incarcerating those with shorter sentences. This division between the state and counties of the custodial and fiscal responsibilities for housing prisoners creates neither a "right" of the inmates to remain in an institution described in WIS. STAT. § 302.01 during the entire term of their sentences, nor a restriction on the department's authority to place inmates committed to its custody wherever it deems appropriate.

¶ 13. The inmates deny, however, that they have been "committed to the custody of the department." Noting that, by its terms, WIS. STAT. § 301.21 applies only to "prisoners who have been committed to the custody of the department," the inmates contend that they were "sentenced to the custody of a Wisconsin State Prison," and that the department "may have custody of the prisons and State property but it does not have custody of the Wisconsin State prison inmates."

The trial court similarly concluded that "[t]hese inmates are *not* committed to the custody of the department," ostensibly because only participants in the intensive sanctions program are specifically identified by statute as having that status.[11] Because the inmates are not free to leave their present surroundings, however, they are clearly in someone's custody, and we conclude that the department is indeed their custodian.

¶ 14. WISCONSIN STAT. § 301.03(2) provides that the department shall "[s]upervise the custody and discipline of all prisoners and the maintenance of state correctional institutions and the prison industries. . . ." We agree with the department, therefore, that the inmates have "been committed to the custody of the department," as provided in WIS. STAT. § 301.21(1m) and (2m). To conclude otherwise would be to conclude that when the legislature enacted § 301.21, it did so intending that no prisoners, except perhaps intensive sanctions program participants, would ever be transferred for confinement in another state. Such a conclusion is unreasonable, given that § 301.21 makes no reference whatsoever to the intensive sanctions program, which, although it contains an incarceration component, is designed to provide an alternative to incarceration "that is less costly than ordinary imprisonment." *See* WIS. STAT. § 301.048(1)(a). Thus, the inmates' attempt to distinguish a "sentence to the Wisconsin state prisons" from a "commitment to the custody of the department" is of no avail.

¶ 15. We are similarly unpersuaded that, in failing to expressly grant transfer authority apart from

[11] *See* WIS. STAT. § 301.048(4) ("A participant [in the intensive sanctions program] is in the custody and under the control of the department. . . .").

the authority to contract for the out-of-state placement of prisoners, the legislature intended to withhold the authority from the department to transfer inmates out of state. We acknowledge that the legislature has specifically spelled out in other statutes the department's authority to transfer inmates among certain types of facilities. But that fact does not mean it must do so in every case. The department points to numerous other statutes which grant it the authority to contract for facilities and services, for which there is no separate implementation authority stated, but which nonetheless convey the authority to carry out the subject matter of the contracts. These include WIS. STAT. § 302.27, which provides that "[t]he department may contract with local governments for temporary housing or detention in county jails . . . for persons sentenced to imprisonment in state prisons," and WIS. STAT. § 303.065(3) which permits the department to "arrange and contract for" suitable facilities "for the purpose of quartering inmates with work release privileges." In neither case is separate "transfer authority" granted, either in the contracting provision or in WIS. STAT. § 302.18, but in both cases, there can be little question that the legislature has authorized the department to place inmates in the facilities for which it has contracted.

¶ 16.    Thus, we conclude that the trial court erred in its interpretation of WIS. STAT. § 301.21, and that the statute indeed authorizes the department to transfer any inmates it deems appropriate for incarceration at facilities in other states, pursuant to contracts which it enters into under the statute. The inmates do not renew on appeal their claims that their transfers out of state violate a federal statute and several constitu-

tional provisions, all of which the trial court rejected. They do, however, offer an alternative rationale for sustaining the trial court's conclusion which appears to be grounded in the Due Process clause of the Fourteenth Amendment. The inmates claim that their sentences "to the Wisconsin state prisons" give them an "expectation" that they will serve their entire sentences in Wisconsin correctional facilities, and that they thus have a "liberty interest" enforceable under state law (the sentencing statutes and their judgments of conviction), which would be infringed upon if the department transfers them to an out-of-state institution. We reject this argument.

¶ 17. As the department points out, prison inmates have no constitutionally protected liberty interest in not being transferred from one prison to another, even if the transfer results in greater restrictions on the prisoner's freedom. *See Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). Moreover, the Supreme Court determined in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), that state laws do not create liberty interests or rights in prisoners unless the imposition of an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" is at stake.

¶ 18. Thus, unless the inmates can establish that the general conditions in an out-of-state facility to which they are to be transferred are more restrictive than those existing in any Wisconsin state prison, there would be no basis for a claim that state law has created in them a liberty interest in remaining in the Wisconsin prisons for the remainder of their sentences. *Cf. Wagner v. Hanks*, 128 F.3d 1173 (7th Cir. 1997). Even if such a showing could be made, however, Wisconsin law does not create a legitimate expectation that

an inmate will not be transferred to an out-of-state institution during his or her sentence. As we have discussed, Wisconsin's sentencing statutes direct only that a prisoner be initially incarcerated in either the state prisons or a county jail, depending on the length of sentence imposed, and the legislature has authorized the department, under WIS. STAT. § 301.21, to transfer inmates in its custody for confinement in out-of-state facilities. The inmates therefore possess no state-created liberty interest which might be infringed by their transfers out of state.

¶ 19. Thus, the inmates have stated neither a statutory nor a constitutional claim upon which their action can continue. Accordingly, we reverse the appealed judgment and direct that on remand, judgment be entered dismissing the inmates' petition.

¶ 20. During the proceedings in the trial court, the department moved to dismiss inmate Evers from the action, claiming that Evers had been reclassified and was no longer being considered for transfer to an out-of-state facility. Thus, argued the department, the present litigation would have no impact on him, and he lacked standing to further pursue it. The trial court denied the department's motion, in part because it concluded that nothing precluded the department from considering Evers for transfer again in the future. The department argues that the trial court erred in so ruling. However, because we are reversing the appealed judgment and directing the dismissal of all of the inmates' claims, we find it unnecessary to determine whether there might be an additional reason for dismissing Evers's individual claim for relief.

¶ 21. A dispute also arose during the proceedings in the trial court regarding the possession of certain department documents by Evers, and the department's

confiscation of those documents from his cell.[12] The department argued that the documents were not intended for public distribution, that their possession by an inmate "could seriously threaten the security of the Wisconsin prison system," and that they constituted "contraband" under department rules, which therefore authorized their confiscation. The trial court disagreed and returned the documents to Evers. Evers, in turn, in conjunction with a motion for summary affirmance of the trial court's judgment, submitted the documents to this court, claiming that his relinquishment of the documents rendered the issue of his right to their possession moot.[13]

¶ 22. Nonetheless, the department asks us to declare that the trial court improperly ruled that Evers had a right to possession of the documents and erred in returning them to him. We decline to take up the issue, inasmuch as we conclude that to do so would constitute little more than the rendering of an advisory opinion. Whatever threat to institutional security may have been presented by Evers's possession of the documents has already occurred, given that he, and apparently other inmates, are now apprised of their contents.[14] Nothing contained in the documents appears to have any bearing on our disposition of this appeal, and

---

[12] The documents consist of an internal staff memorandum regarding "Tennessee Placement Criteria," a "Screening Form," and a "Draft Out of State Population Key and Tracking" form.

[13] Evers asserted in his motion that he was surrendering the original documents forwarded to him by the trial court, and that he had not copied the documents while they were in his possession.

[14] Evers asserts that he had originally obtained the documents from another inmate, and that copies of these documents had been circulating among prison inmates.

whether they constitute contraband under prison rules is no longer of consequence in this litigation, inasmuch as it is to be dismissed. Our declination to address the issue should not be interpreted as a decision on the merits of the dispute.

¶ 23.  Finally, we note that inmates Evers and Ferguson cite as errors the trial court's determination that its declaratory judgment and injunction apply only to the petitioning inmates, and its refusal to certify the litigation as a class action on behalf of all inmates similarly situated. As we have noted (see footnote 2), Evers and Ferguson voluntarily dismissed their cross-appeal, and this claim is thus not properly before us. Furthermore, because we are directing that the action be dismissed, the issue of whether the trial court erred in these regards, like the interlocutory issues raised by the department, is no longer of consequence to the parties.

## CONCLUSION

¶ 24.  For the reasons discussed above, we reverse the appealed judgment and direct that on remand, judgment be entered dismissing the inmates' action. Because we decline to address the issues of Evers's standing to continue this litigation and the department's confiscation of certain documents from him, nothing in this opinion should be interpreted as expressing any view as to the merits of those issues.

*By the Court.*—Judgment reversed and cause remanded with directions; cross-appeal dismissed.