IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2001

## STATE OF TENNESSEE v. ANTHONY WAYNE LANKFORD and CHRISTOPHER ARTHUR McKEON

Appeal from the Circuit Court for Tipton County
No. 3781     Joseph H. Walker, III, Judge

No. W2000-00708-CCA-R3-CD  - Filed February 23, 2001

This case raises issues of first impression in Tennessee.  The defendants are convicted felons from Montana who were sent to serve portions of their Montana sentences at a private, for-profit prison facility in Tennessee.  Following their escape from the Tennessee facility, the defendants were each convicted of one count of escape, in violation of Tennessee Code Annotated Section 39-16-605.  The defendants now appeal their convictions, raising two interrelated issues:  1) whether Tennessee's escape statute makes it a crime for a prisoner who has not been convicted under Tennessee law to escape from a private prison in this state; and 2) whether they were unlawfully imprisoned in Tennessee.  After a thorough review of applicable law, we conclude that Tennessee Code Annotated Section 39-16-605, by its plain language, applies to the escape of an out-of-state prisoner from a private prison facility in this state.  We further conclude that the defendants, duly convicted of crimes in Montana and incarcerated at the private prison pursuant to a contract between the Montana Department of Corrections and a private prison company, were not unlawfully imprisoned in Tennessee.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Gary F. Antrican, District Public Defender, Somerville, Tennessee, for the appellant, Anthony Wayne Lankford, and Michael W. Whitaker, Covington, Tennessee, for the appellant, Christopher Arthur McKeon.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendants are prisoners from Montana who were convicted of escaping from a private prison facility in Tennessee, in violation of Tennessee Code Annotated Section 39-16-605. Following the denial of their motions for a new trial, the defendants each filed a timely appeal to this court, both raising essentially the following two issues:

I. Whether Tennessee's escape statute, Tennessee Code Annotated Section 39-16-605, is applicable to an escape from a private prison facility by an out-of-state prisoner who has not been convicted of any crime in Tennessee; and

II. Whether the defendants were unlawfully imprisoned in Tennessee.

After our review of the record and applicable law, we conclude that Tennessee's escape statute is broad enough to cover the escape from a private prison facility of an out-of-state prisoner, and that the defendants were not unlawfully incarcerated in Tennessee. Accordingly, we affirm the judgment of convictions.

## FACTS

In 1997, in response to prison overcrowding, the Montana Department of Corrections, pursuant to authority granted to it by the Montana Legislature, contracted with Corrections Corporation of America ("CCA"), a private for-profit prison company, to have several hundred Montana prisoners serve a portion of their sentences at CCA's West Tennessee Detention Facility, located in Mason, Tipton County, Tennessee. The defendants, Anthony Wayne Lankford and Christopher Arthur McKeon, were among a group transferred under the terms of the contract from Montana State Prison to the Mason facility in the fall of 1997. Lankford, who had been convicted in Montana of one count of deliberate homicide by use of a dangerous weapon and one count of attempted deliberate homicide by use of a dangerous weapon, was serving a 220-year sentence. McKeon, convicted in Montana of armed robbery and theft, was serving a fifty-year sentence. In addition, McKeon owed time to Oklahoma and Iowa for separate offenses committed in those states.

On the afternoon of May 20, 1999, the defendants scaled two razor wire perimeter fences at the southern end of the facility and disappeared into a nearby wooded area. Despite a massive manhunt coordinated by the Tennessee Highway Patrol and involving a number of local and state law enforcement agencies, the defendants were not recaptured until one week later. Both were subsequently indicted for escape from a penal institution, in violation of Tennessee Code Annotated Section 39-16-605.

Trial was held on January 10, 2000. Steven Dotson, former assistant warden of the West Tennessee Detention Facility, identified the defendants as two inmates who had escaped from the prison on May 20, 1999, and who had been recaptured in Shelby County, Tennessee, on May 27, 1999. Defendant Christopher McKeon testified that he had never agreed to the transfer from

Montana to Tennessee, and that his intention in leaving the facility had been to return to Montana. His understanding of Montana law was that once sentenced to Montana State Prison, he was entitled to remain there until "parole, discharge, or death." McKeon complained that the Tennessee facility monitored inmate telephone calls, did not offer a course he was required to complete before meeting with the Montana Parole Board, and paid inmates lower wages than those paid at Montana State Prison.

The jury returned guilty verdicts for both defendants. The trial court sentenced Lankford as a Range I, standard offender to two years in the Tennessee Department of Correction, to be served consecutively to the Montana sentence he was currently serving. McKeon was sentenced as a multiple, Range II offender to four years in the Tennessee Department of Correction, to be served consecutively to his prior sentences in Montana, Oklahoma, and Iowa.

## ANALYSIS

### I. Applicability of Escape Statute

The defendants argue that the escape statute does not make it an offense for a Montana prisoner to escape from a private prison. Tennessee's escape statue reads:

> (a) It is unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution, as defined in § 39-16-601.

Tenn. Code Ann. § 39-16-605(a) (1997). Section 39-16-601 reads, in pertinent part:

> As used in this part, unless the context otherwise requires:
>
> . . . .
>
>  (2) "Custody" means under arrest by a law enforcement officer or under restraint by a public servant pursuant to an order of a court;
>
>  (3) "Escape" means unauthorized departure from custody or failure to return to custody following temporary leave for a specific purpose or limited period, but does not include a violation of conditions of probation or parole; and
>
>  (4) "Penal institution," for the purposes of this part, includes any institution or facility used to house or detain a person:
>
>    (A) Convicted of a crime; or

(B) Adjudicated delinquent by a juvenile court; or

(C) Who is in direct or indirect custody after a lawful arrest.

Tenn. Code Ann. § 39-16-601 (1997).

Lankford contends that he was not in "custody," for the purposes of the statute, because the Mason facility, which does not house Tennessee prisoners, is not an agent of the State of Tennessee, and its employees are neither law enforcement officers nor public officials. If he was not in custody, he argues, he cannot be guilty of escape, "the unauthorized departure from custody." McKeon makes a similar argument, asserting that no Tennessee statute specifically addresses the situation at Mason, where a private prison company has contracted with another state to house that state's prisoners in Tennessee. McKeon suggests that his unauthorized departure from the Mason facility is properly the concern of the State of Montana, rather than the State of Tennessee, and argues that Tennessee lacks jurisdiction to prosecute him for the offense. We disagree.

This issue is a matter of statutory interpretation, and thus, a question of law. Accordingly, our review is *de novo*, with no presumption of correctness given to the trial court's judgment. Warren v. American Holding Co., 20 S.W.3d 621, 623 (Tenn. 2000). A court's role in construing a statute is to ascertain and give effect to legislative intent. Id., Schering-Plough Healthcare Products, Inc. v. State Bd. of Equalization, 999 S.W.2d 773, 775 (Tenn. 1999). Whenever possible, legislative intent is to be ascertained from the natural and ordinary meaning of the language used. Id.; Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue, 865 S.W.2d 1,2 (Tenn. 1993). Further, a statute should be construed, whenever possible, so that its component parts are consistent and reasonable. State v. Odom, 928 S.W.2d 18, 30 (Tenn. 1996); Cohen v. Cohen, 937 S.W.2d 823, 827 (Tenn. 1996). Finally, statutes should be construed in the light of reason. Voss v. Shelter Mut. Ins. Co., 958 S.W.2d 342, 345 (Tenn. Ct. App.), perm. app. denied (Tenn. 1997).

We begin our analysis of this issue by recognizing that the Tennessee Attorney General's Office has expressed the view that the language of the escape statute is broad enough to cover the escape of an out-of-state prisoner from a private prison in this state, including one which houses only out-of-state inmates. See Tenn. Op. Att'y Gen. No. 98-232 (1998). The plain language of Tennessee Code Annotated Section 39-16-605 makes it "unlawful for any person . . . convicted of an offense to escape from a penal institution," defined in § 39-16-601(4) as "any institution or facility used to house or detain a person . . . convicted of a crime[.]" When determining legislative intent, the words of a statute should be given their common and ordinary meaning. State v. Levandowski, 955 S.W.2d 603, 604 (Tenn. 1997) (citations omitted). As written, the statute clearly applies to these defendants.

We relied on the statute's plain language in State v. Holmes, 995 S.W.2d 135, 140 (Tenn. Crim. App. 1998), perm. app. denied (Tenn. 1999), cited by the State, to determine that the status of the prisoner is irrelevant to a prosecution for escape. The defendant in Holmes escaped from the Chester County Jail, where he was being held pursuant to a contract with the United States Marshal Service. Id. at 138. He appealed his subsequent conviction for escape to this court, arguing that his

status as a federal prisoner deprived the State of Tennessee of jurisdiction to prosecute him for the offense. We rejected the argument, noting that the escape statute is couched in generic, non-specific terms:

> It is noteworthy that nowhere within the statute is there an explicit requirement that custody be for a *state* offense. Nor is there any indication that a prisoner's status should be relevant to the escape inquiry. In fact, the statute is phrased in generic terms which tend to negate that very suggestion. It encompasses a person convicted of "an offense," *not* "a state offense." It requires custody to be pursuant to the order of "a court," *not* "a state court."

Id. at 140 (emphasis in original).

We conclude that the status of the prison, like the status of the prisoner, is irrelevant to prosecution under the escape statue. The statute, which speaks in broad terms of "*any* institution . . . used to house or detain a person . . . convicted of a crime," Tenn. Code Ann. § 39-16-601(4) (1997) (emphasis added), nowhere requires that the escape occur from a state, county, or city institution, as opposed to a private, for-profit facility. To the contrary, elsewhere in the Code it is made clear that our Legislature intended that prisoners housed in private prisons in Tennessee be subject to prosecution under the statute. The Private Prison Contracting Act of 1986, which covers the contractual housing of Tennessee prisoners in private prison facilities, specifically makes Tennessee prisoners housed in private prisons subject to prosecution for felony escape. "The provisions of title 39, chapter 16, including, *without limitation*, § 39-16-201 and §§ 39-16-605 – 39-16-608 *shall* apply to offenses committed by or with regard to inmates assigned to facilities or programs for which a prison contractor is providing correctional services." Tenn. Code Ann. § 41-24-108 (1997) (emphasis added). Tennessee Code Annotated Section 41-24-116, "Escape from private prison or facility," holds private prison officials responsible for immediately reporting to local and state authorities the escape of a prisoner from a private prison. Tenn. Code Ann. § 41-24-116 (1997).

There is nothing in the escape statute to support treating out-of-state prisoners housed in private prison facilities differently from in-state prisoners housed in similar facilities. The defendants were no less in "custody," for the purposes of the statute, than would be a Tennessee prisoner housed in a private facility pursuant to a contract between the Tennessee commissioner of correction and a private prison company. Custody is defined as "under arrest by a law enforcement officer or under restraint by a public servant pursuant to an order of a court." Tenn. Code Ann. § 39-16-601(2). Custody need not be direct. See Tenn. Code Ann. § 39-16-601(4)(C) (1997) (defining "penal institution" as facility used to house a person who is "in direct or indirect custody" after lawful arrest) and Tenn. Code Ann. § 41-24-102(5) (1997) (defining "prison contractor" as "any entity entering a contractual agreement with the commissioner to provide correctional services to inmates under the custody of the department").

-5-

It is undisputed that the defendants had been convicted of felonies in Montana, and that they had each been sentenced to lengthy prison terms for those convictions. It is also undisputed that it was the Montana Department of Corrections which caused the defendants to be "under restraint" in Tennessee, by contracting to have them serve a portion of their Montana sentences at the Mason facility. Montana Code Annotated Section 53-30-106, authorizing the Montana Department of Corrections to enter into contracts with private prison corporations for the confinement of selected prisoners in private prisons, states that "[p]ersons committed to the department . . . remain in the department's legal custody . . . ." See Mont. Code Ann. § 53-30-106(1) (1999). Thus, the defendants' escape from the Mason facility constituted an unauthorized departure "from custody," as defined in the statute. See Wisconsin ex rel. Johnson v. Sullivan, No. 00-1922, 2001 WL 25816, at *2 n.4 (Wis. Ct. App. Jan. 11, 2001) (concluding it is not inconsistent that Wisconsin prisoners housed in private prison in Tennessee are subject to Tennessee law while at the same time remaining under the custody of the Wisconsin Department of Corrections).

In sum, we agree with the State that a conviction for escape under Tennessee Code Annotated Section 39-16-605 requires neither that the inmate have been serving time for a conviction in Tennessee, nor that he escape from a public facility. The defendants, convicted Montana felons housed by contract in a private prison facility in this state, met the elements of the statute by their unauthorized departure from the Mason facility.

## II. Legality of Defendants' Incarceration in Tennessee

The defendants next raise the issue of whether they were unlawfully imprisoned in Tennessee.[1] The defendants' arguments on this issue overlap with their arguments against the applicability of the escape statute to out-of-state prisoners housed in private facilities in this state. They assert that their transfer from Montana State Prison to the Mason facility without their consent violated their due process rights under both the United States and Tennessee Constitutions. Lankford argues that Montana's power to incarcerate him ends at its borders, and compares his incarceration in the Mason facility to involuntary servitude. McKeon uses the terms "banishment" and "kidnapping" to describe his transfer from Montana to the Mason facility without his consent, and accuses Tennessee of aiding and abetting in Montana's criminal actions by prosecuting him for escape. Both defendants point out that no Tennessee statute specifically authorizes the detention of out-of-state prisoners in private prison facilities in Tennessee, and argue that they cannot lawfully have been imprisoned in the Mason facility without Tennessee's express permission. According to the defendants' reasoning, without Tennessee's express authorization, and with Montana's alleged lack of authority to imprison them in this state, they were not in "custody" for the purposes of the escape statute and, thus, cannot be guilty of escape for their unauthorized departure from the facility.

---

[1]The defendants were returned to Montana shortly after their January 10, 2000 trial. All other Montana inmates were apparently returned in the fall of 1999, at the end of the contract term between CCA and the Montana Department of Corrections.

Most of these arguments have previously been raised by other prisoners and rejected by other courts. In <u>Olim v. Wakinekona</u>, 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983), a case involving the transfer of a Hawaii prisoner to a prison in California, the United States Supreme Court held that an interstate prison transfer does not deprive an inmate of any liberty interest under the United States Constitution. <u>Id.</u> at 245, 103 S. Ct. at 1745. Observing that "[o]vercrowding and the need to separate particular prisoners may necessitate interstate transfers[,]" and that "[s]tatutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States," <u>id.</u> at 246, 103 S. Ct. at 1746, the court concluded that "an inmate . . . has no justifiable expectation that he will be incarcerated in any particular State." <u>Id.</u> at 245, 103 S. Ct. at 1745. The Court wrote:

> In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State. Confinement in another State, unlike confinement in a mental institution, is "within the normal limits or range of custody which the conviction has authorized the State to impose."

<u>Id.</u> at 247, 103 S. Ct. at 1746 (quoting <u>Meachum v. Fano</u>, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976)).

Following <u>Olim</u>, federal and state courts have routinely held that prisoners' due process rights are not implicated by their transfer to a prison in another state, including to a private prison which contracts to house them for their convicting state. <u>See</u> <u>e.g.</u> <u>Pischke v. Litscher</u>, 178 F.3d 497, 500 (7th Cir.), <u>cert.</u> <u>denied</u>, 528 U.S. 954, 120 S. Ct. 380, 145 L. Ed. 2d 296 (1999) (challenging Wisconsin statute authorizing prison authorities to contract for housing of Wisconsin prisoners in private prisons in other states) ("A prisoner has a legally protected interest in the conduct of his keeper, but not in the keeper's identity."); <u>Montez v. McKinna</u>, 208 F.3d 862, 865-66 (10th Cir. 2000) (challenging transfer from Wyoming State Prison to private facilities in Texas and Colorado) ("This court has determined that neither the United States Constitution nor any federal law prohibits the transfer of an inmate from one state to another.") (internal quotations omitted); <u>Lambert v. Sullivan</u>, 35 F.Supp.2d 1131, 1133 (E.D. Wis. 1999) ( challenging proposed transfer from Wisconsin State Prison to private prison in either Texas or Tennessee) ("Simply put, federal constitutional guarantees, such as the right to due process, are not implicated by [interstate prison] transfers"); <u>In re Matteson,</u> 12 P.3d 585, 593 (Wash. 2000) (protesting transfer from Washington State Prison to private prison in Colorado) ("[P]risoners do not have a right to be housed in a certain prison or even a certain state."); <u>Evers v. Sullivan</u>, 615 N.W.2d 680, 686 (Wis. Ct. App. 2000) (seeking declaration that proposed transfer from Wisconsin State Prison to private out-of-state facility was unconstitutional) ("[P]rison inmates have no constitutionally protected liberty interest in not being transferred from one prison to another, even if the transfer results in greater restrictions on the prisoner's freedom.").

Arguments that the convicting state loses jurisdiction over its prisoners when it sends them beyond its borders, or unconstitutionally extends its sovereignty by contracting for them to be housed in another state, have also been rejected. In Evans v. Holm, 114 F.Supp.2d 706 (W.D. Tenn. 2000), a prisoner assigned to the Mason facility argued that he was entitled to an unconditional release, asserting that his convicting state had waived jurisdiction over him by transferring him to the private prison out-of-state. Id. at 707. The district court observed that "[i]t is a popular myth among prisoners that a state's authority over a prisoner ends at the state's geographical border[,]" id. at 711, noting that it had rejected similar arguments from CCA prisoners "well over a dozen times." Id. at 708. After reviewing the law regarding interstate prison transfers, the district court rejected Evans' claim as well, writing:

> The sense of this entire body of caselaw is that a prisoner simply has no right to complain if the state decides to house him outside its borders, or even if he is actually transferred between various jurisdictions, each of which has convicted him. Only when a prisoner is released for some time through no fault of his own has there ever even been a question raised about a possible due process violation.
>
> In this case, Evans has no such claim. He clearly has not been released. Equally clearly, he has not even been transferred to the custody of another sovereign. The State of Wisconsin has simply contracted to house him outside its boundaries.

Id. at 713.

In a recent case, Wisconsin ex rel. Johnson v. Sullivan, No. 00-1922, 2001 WL 25816 (Wis. Ct. App. Jan. 11, 2001), a prisoner transferred from Wisconsin to a CCA facility in Tennessee argued that the transfer violated the supremacy clause of the United States Constitution by extending Wisconsin's jurisdiction beyond its borders. The court summarily rejected this argument, writing:

> First, Wisconsin has not extended its territorial limits by contracting with a Tennessee prison to house Wisconsin prisoners. Tennessee has authorized private entities such as the Correctional Corporation of America to do business within its state. It could withdraw its authorization if it chose to do so. In the meantime, prisoners who are housed in Tennessee are subject to Tennessee laws.

Id. at *1-2.

The State of Montana, like the State of Wisconsin, contracted to have its prisoners serve portions of their state sentences at a private prison in Tennessee. In so doing, it merely delegated its responsibility to incarcerate to a private prison operating in this state; it did not waive its

jurisdiction over the defendants, did not relinquish legal custody of them, and did not extend its sovereignty into the State of Tennessee.

A few courts have placed limits on the transfer of state prisoners to out-of-state facilities. They have done so, however, based not on federal law, but on provisions of law of the sending state. In Ray v. McCoy, 321 S.E.2d 90 (W.Va. 1984), the Supreme Court of Appeals of West Virginia held that the imprisonment of state prisoners beyond the borders of the state without their consent violated the transportation clause of the state constitution, which states that "[n]o person shall be transported out of, or forced to leave the State for any offense committed within the same." Id. at 92. In Brandon v. Alaska Department of Corrections, 938 P.2d 1029 (Alaska 1997), the Alaska Supreme Court held that an Alaska prisoner's transfer out-of-state may be judicially reviewed to determine if it complies with the prisoner's rehabilitation rights under the state constitution. The Alaska Department of Corrections had ordered Brandon, a state prisoner, transferred to a private facility in Arizona in order to alleviate local prison overcrowding. Id. at 1030. Brandon appealed the decision, arguing that the transfer interfered with his rehabilitation because it removed him too far from his family. Id. The Alaska Supreme Court reversed the superior court's dismissal for lack of jurisdiction, holding that judicial review of the administrative decision was appropriate because the transfer involved an alleged violation of Brandon's state constitutional right to rehabilitation. Id. at 1033.

The defendants in the case at bar do not argue that their transfer to Tennessee violated any provision of Montana law,[2] and this court would not consider the arguments if they had.[3] Instead, the defendants argue that their incarceration in a private prison in Tennessee violated provisions of the Tennessee Constitution. Specifically, Lankford asserts that his incarceration violated article I, section 8, which states that "[n]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, . . . , but by the judgment of his peers or the law of the land[,]" and article I, section 33, which states that "[s]lavery and involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, are forever prohibited in this State." Tenn. Const. art. I, §§ 8, 33. We find these arguments to be wholly without merit.

The defendants, incarcerated at the Mason facility to serve time on their Montana sentences, were clearly imprisoned by the "judgment of [their] peers" and by "the law of the land." Furthermore, their incarceration in Tennessee for crimes for which they had been duly convicted in Montana, in no way constituted "involuntary servitude" or slavery. Article I, Section 33 of the Tennessee Constitution expressly allows for the imprisonment of those convicted of a crime. The

---

[2]Although McKeon testified at trial that he believed Montana law prohibited his transfer from Montana State Prison, he limited arguments on appeal to alleged violations of federal and Tennessee law.

[3]We agree with the State that any specific allegations that Montana violated the defendants' rights under Montana state law by its decision to transfer them without their consent need to be raised in another forum. The State of Tennessee was not a party to the contract between CCA and the Montana Department of Corrections, and had no part in the decision to transfer these defendants to the facility in Tennessee. We confine ourselves here to a determination of whether the defendants' incarceration at the Mason facility was lawful, such as to make their conviction under the escape statute proper.

Seventh Circuit Court of Appeals rejected a similar argument in Pischke. There, Wisconsin inmates challenged their transfers to a private prison in another state as a violation of the Thirteenth Amendment to the United States Constitution, prohibiting involuntary servitude. Noting the express exception in the Thirteenth Amendment for persons imprisoned pursuant to conviction for a crime, the Court characterized the claims as "thoroughly frivolous," admonishing, "Let Wisconsin prisoners have no doubt of the complete lack of merit of their Thirteenth Amendment claims." Pischke, 178 F.3d at 501. We find Lankford's arguments on this issue, as well as McKeon's assertion that Tennessee is aiding and abetting the criminal activity of Montana, to be unconvincing.

Lastly, the defendants argue that their detention in the Mason facility was unlawful because no Tennessee statute expressly authorizes the incarceration of out-of-state prisoners in private prison facilities in this state. We agree that no Tennessee statute specifically addresses the situation at the Mason facility. We disagree, however, that the lack of a specific statute makes the defendants' incarceration unlawful.

Some states have enacted specific laws governing the operation of private prisons housing prisoners from other jurisdictions within their borders, while others have not. Arizona, Idaho, and Oklahoma require private prison facilities housing out-of-state inmates to comply with specific statutory provisions in order to operate within their states. See Ariz. Rev. Stat. Ann. §§ 41-1681 to -1682 (West 1999); Idaho Code § 20-807 (2000); Okla. Stat. Ann. tit. 57, § 563.2 (West 2000). Mississippi specifically authorizes the housing of out-of-state inmates at private prisons in two Mississippi counties. See Miss. Code Ann. § 47-4-1 (1999). West Virginia and Colorado expressly prohibit the operation of private prisons housing out-of state prisoners within their borders without the express written approval of specific state officials. See W.Va. Code § 25-5-5 (1990); 7 Colo. Rev. Stat. § 17-1-104.5 (1999). Kansas and North Carolina forbid the operation of private prisons housing prisoners from other jurisdictions within their borders, unless expressly authorized by statute. See Kan. Stat. Ann. § 75-52, 133 (1997); N.C. Gen. Stat. Ann. § 148-37.1 (2000).

The defendants are correct that there are no Tennessee statutes which specifically cover the housing of exclusively out-of-state prisoners in private prison facilities within the state. That the practice is not specifically authorized by statute, however, does not make the practice unlawful. As the Tennessee Attorney General's office noted in its 1998 opinion on the subject:

> Arguments exist for the legality of housing out of state prisoners by private prison management companies. No Tennessee statute prohibits this business; thus, it can be argued that it is not against the public policy of this state to operate such a business. Furthermore, if Tennessee officials know that private facilities are housing out of state prisoners and take no action to regulate the activity, it may be argued that the state's tacit approval of the practice reflects a public policy that accommodates the practice.

Tenn. Op. Att'y Gen. No. 98-232 (1998). Thus, while Tennessee, unlike some states, has no statutes expressly permitting the operation of private prisons housing out-of-state prisoners within Tennessee, it also, unlike other states, has no statutes expressly prohibiting the practice without express authorization by law. Corrections Corporation of America is registered to do business within this state, and is not concealing the fact that it houses out-of-state prisoners at private prisons within our borders. We therefore conclude that the defendants' incarceration at the Mason facility was not unlawful.

## CONCLUSION

We conclude that the plain language of the escape statute, making it unlawful for a person convicted of a crime to escape from a penal institution in this state, requires neither that the prisoner have been convicted of a crime within this state, nor that the escape occur from a public facility. We further conclude that nothing in Tennessee law prohibits the operation of a private prison within this state which houses only out-of-state prisoners. Therefore, the defendants' unauthorized departure from the Mason facility satisfied the elements of the escape statute, making their convictions under the statute proper. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE