**Anthony J. DOTY, Petitioner,**

v.

**James DOYLE, Wisconsin Attorney General, Respondent.**

No. 00–C–544.

United States District Court, E.D. Wisconsin.

Jan. 25, 2002.

Anthony Doty, Whiteville Correctional Facility, Whiteville, TN, pro se.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Petitioner Anthony J. Doty is a Wisconsin state prisoner serving a life sentence. In 1998, Wisconsin Department of Corrections (DOC) officials transferred him to a private out-of-state prison, the Whiteville Correctional Facility in Tennessee, which is owned and operated by the Corrections Corporation of America (CCA). Doty requested habeas relief on the ground that the State of Wisconsin lost its authority to keep him incarcerated once it shipped him beyond its boundaries. I denied the petition, and Doty has appealed. Doty's day-to-day prison trust account has a balance close to zero, and so, in order to pay his $105 appellate filing fee, he seeks the return of more than $500 of his money that DOC officials previously diverted into a "release account" held in his name for his use upon his possible future release. (Doty is scheduled to become eligible for parole in August 2012.) In a previous order, I directed the Secretary of the DOC to show cause why these moneys should not be returned forthwith. The issue is now ready for resolution.

### I. BACKGROUND

DOC regulations provide for two major Wisconsin prisoner accounts: a "general account" and a "release account."[1] All prisoner income, both from earnings and any other sources such as gifts from relatives, is deposited into the general account, subject to mandatory deductions for victim and witness assistance surcharges. Wis.Admin.Code § DOC 309.02(8) (last amended Aug. 2001). A prisoner may request disbursements from his or her general account for any reason. § DOC 309.49(2) (last amended Sept. 1986).

The "release account" is created by diverting 15% of each deposit to the prisoner's general account, once victim and witness assistance surcharges have been fully paid and once the prisoner has been transferred to a permanent placement. § DOC 309.466(1) (promulgated Sept. 1986). The release account funds are deposited in the inmate's name, and the 15% deductions continue until the account reaches $500. *Id.* A prisoner may request this account to be deposited in an interest-bearing bank account, § DOC 309.466(3), and so a release account may accumulate more than $500, as Doty states is true of his release account. The purpose of the release accounts is to ensure "that the inmate has sufficient funds when released from the institution to purchase release clothing, out-of-state transportation, and other items and services needed on release." § DOC 309.02(18). Thus, DOC regulations allow money to be withdrawn from a release account only upon or in preparation for release. § DOC 309.466(2).

■ Notwithstanding this DOC regulation, the courts have found that when a prisoner's general fund has insufficient funds to pay filing fees, both the Wisconsin Prison Litigation Reform Act (Wisconsin PLRA), Wis.Stat. § 814.29(1m),[2] and the federal Prison Litigation Reform Act (federal PLRA), 28 U.S.C. § 1915(b), authorize the courts to order that the money in a prisoner's release account be made avail-

---

1. A state court decision also refers to prisoner release savings, work release, miscellaneous and savings accounts. *State ex rel. Coleman v. Sullivan,* 229 Wis.2d 804, 806 n. 3, 601 N.W.2d 335 (Ct.App.1999).

2. Unless otherwise stated, all citations to the Wisconsin Statutes are to the 1999–2000 edition.

able for that purpose. *Spence v. Cooke,* 222 Wis.2d 530, 537, 587 N.W.2d 904 (Ct. App.1998); *Spence v. McCaughtry,* 46 F.Supp.2d 861 (E.D.Wis.1999). (All the same, in deference to the Wisconsin public policy behind release accounts, judges of this district do not routinely look to prisoners' release accounts when they assess initial partial filing fees under the federal PLRA, *Smith v. Huibregtse,* 151 F.Supp.2d 1040, 1042 (E.D.Wis.2001), although they will do so upon request from the prisoner, as in *Spence v. McCaughtry.*)

## II. DISCUSSION

Doty does not challenge the DOC's authority to divert a portion of prisoners' income to release accounts, and to prevent them from accessing their release accounts, while they are confined in institutions within Wisconsin. However, he maintains that once he was transferred out of state, the DOC lost such authority.

■ It is clear that the DOC would not have authority to divert (or to order CCA to divert) an out-of-state prisoner's income to a release account. Wis.Stat. § 301.21(2m) authorizes the DOC to contract with private out-of-state prisons to house Wisconsin prisoners, and (the state courts have found) to transfer Wisconsin prisoners to such institutions. *Evers v. Sullivan,* 237 Wis.2d 759, 771, 615 N.W.2d 680 (Ct.App.2000). Nonetheless, by statute, Wisconsin prisoners who are transferred to an institution in another state pursuant to such a contract are "subject to all provisions of law and regulation concerning the confinement of persons in that institution under the laws of that state." Wis.Stat. § 301.21(2m)(b). *See also* Wis.

Stat. § 302.18(5) ("Any person who is legally transferred by the department shall be subject to the same statutes, regulations and discipline as if the person had been originally sentenced to that institution."). Doty's income while at CCA–Whiteville Correctional Facility is thus not subject to Wisconsin DOC regulations, but to whatever Tennessee statutes and regulations govern inmate accounts. *State ex rel. Johnson v. Sullivan,* No. 00–1922, 2001 WL 25816, at \*1 n. 4. (Wis.Ct.App. Jan. 11, 2001) (unpublished opinion)[3] (finding it unproblematic that Wisconsin prisoners who are transferred to CCA–Whiteville Correctional Facility "are subject to Tennessee law at the same time they remain under the custody of the Wisconsin Department of Corrections (DOC)"). Accordingly, Wis.Admin.Code § DOC 309.466(1) does not authorize the DOC to divert (or cause CCA to divert) an out-of-state prisoner's income to a release account.

The next issue is how a release account, created and funded while a prisoner was incarcerated within Wisconsin, is affected once the prisoner is transferred out of state. Wis.Admin.Code § 309.466(2) purports to prohibit release accounts from being accessed for any purpose until a prisoner is released. Over two years ago, a DOC official wrote Doty stating that since he was no longer confined within Wisconsin, Wis.Admin.Code ch. DOC 309 did not apply to him; but that because "the Department of Corrections is still using parts of that chapter as a guideline," his request for the return of his release account was being denied. (R. 10 Ex. B at 1.) The Sec-

---

3. Unpublished opinions of the Wisconsin Court of Appeals are "of no precedential value" and may not be cited as precedent or authority in any Wisconsin state court. Wis. Stat. § 809.23(3). Nonetheless, § 809.23(3) does not preclude such unpublished opinions from being cited to or by other courts, such as

this federal district court or the state courts of other states, for whatever persuasive value they may have. Thus, *Johnson* has also been cited by a Tennessee state court. *State v. Lankford,* 51 S.W.3d 212, 217 (Tenn.Crim. App.2001).

retary of the DOC has now filed an affidavit from another DOC official, Steven B. Casperson, Administrator of the Division of Adult Institutions, asserting that the DOC's 1999 letter "misstates the DOC's position on inmate release accounts." (R. 42 ¶ 6.) Unfortunately, though, Administrator Casperson does not explain how the letter is mistaken. Chapter DOC 309 regulates inmate resources, and it is highly unlikely that the DOC now takes the position that this chapter actually does apply to out-of-state prisoners; if it did, then the DOC would be obliged to require CCA and other out-of-state prisons to guarantee Wisconsin prisoners the same access to legal materials, visitors, reading materials, and other resources that ch. DOC 309 requires. Likewise, it is hard to see any mistake in the 1999 statement that the DOC was still using portions of ch. DOC 309 as guidelines. Indeed, the Revisor of Statutes advised the Wisconsin Court of Appeals in 1998 that "an amendment or other change affecting Wis.Admin.Code § DOC 309.466(2) is in process." *Spence v. Cooke,* 222 Wis.2d at 537 n. 7, 587 N.W.2d 904. To date, this section has still not been amended or changed, although other sections of ch. DOC 309 have been.

Two of the Secretary's arguments merit brief comment. The first is that "it is DOC's understanding that the Wisconsin Legislature did not want inmates to be without funds upon their release." (R. 42 ¶ 7.) The Secretary neglects to mention that the Legislature formerly required the DOC to provide inmates with release money upon discharge, but chose to delete this requirement in 1985. Wis.Stat. § 53.13

(1983–84), *amended by* 1985 Wis.Laws 120, § 49. The current regulation, Wis.Admin.Code § DOC 309.466(2), is promulgated by the DOC, and is not prescribed or required by any legislative mandate.[4] The DOC cannot assert that it is merely fulfilling a legislative command. The second argument is that it is good sense to ensure that released prisoners have some funds when they are released (especially, the Secretary suggests, because prisoners are released in Wisconsin, regardless of where they were incarcerated). Nonetheless, the issue before me is whether the DOC's practice is lawfully authorized, not whether it is a wise public policy.

I therefore examine the nature of the release accounts. They are held in trust for the prisoner, and thus are trust fund accounts and are subject to trust law. *Spence v. McCaughtry,* 46 F.Supp.2d at 863. The terms of a trust are set when the trust is created. George Gleason Bogert & George Taylor Bogert, *Bogert's Trusts and Trustees* § 1 at 10 (rev.2d ed.1984). As we have seen, release trust accounts are created, and their terms are set, pursuant to Wis.Admin.Code § DOC 309.466. Under this regulation, a release trust account, once created, may be disbursed only to or for the benefit of the inmate upon release.

Under trust law, a trust, once created, may be terminated if its purposes cannot be accomplished or carried out due to change in circumstances. Bogert & Bogert, *Bogert's Trusts and Trustees* § 1002 at 351 (rev.2d ed.1983); *In re Solbrig's Will,* 7 Wis.2d 44, 48–49, 96 N.W.2d 97

---

4. To be sure, the Legislature has shown that it is aware of the DOC's current system of prisoner-funded release accounts. *See, e.g.,* Wis. Stat. § 814.29(1m)(b)(2) (Wisconsin PLRA, defining "trust fund account statements" to include "accounts accessible to the prisoner before or upon release"). But the Wisconsin PLRA does not apply to prisoners whom the DOC sends to out-of-state institutions, *State ex rel. Speener v. Gudmanson,* 234 Wis.2d 461, 471–72, 610 N.W.2d 136 (Ct.App.2000), and even if it did, it does not purport to authorize release accounts for out-of-state prisoners, much less to require them.

(1959). Thus, if a prisoner were sentenced to life without possibility of parole, his or her release account could be terminated due to impossibility of accomplishment of purpose.

The only change in circumstances in the present case is that the DOC transferred Doty out of state. His release is still possible; indeed, so far as the parties have informed the court, his transfer has no effect on the likelihood or timing of his eventual release. The change in circumstances has thus not made the purpose of Doty's release trust account impossible to be accomplished, or even less likely to be accomplished. On that basis, there is no ground under trust law to terminate the release trust account. Doty's being transferred to an out-of-state institution does not interfere with the DOC's authority to continue administering his release trust account pursuant to the terms in place when it was created, namely, Wis.Admin.Code § DOC 309.466 (Sept.1986).

Doty requested that his filing fee be ordered paid from his release account if his request for the return of the entire release account was denied. Based upon this request, and under the analysis of *Spence v. McCaughtry*, 46 F.Supp.2d at 863, I will order the Secretary of the DOC to forward Doty's appellate filing fee from his release trust account. As the above discussion should make clear, so long as Doty remains incarcerated out of state, the DOC may not replenish his release account by diverting his income.

### III. CONCLUSION

**NOW, THEREFORE, IT IS HEREBY ORDERED** that petitioner's request for the return of release trust account is **DENIED.**

**IT IS FURTHER ORDERED** that within **15 DAYS** of the date of this order, the Secretary of the Department of Corrections shall forward to the Clerk of Court for the District Court $105 from petitioner for pay his appellate filing fee in this action.