# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER 1998 SESSION

FILED

November 10, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| Appellee, | ) NO. 02C01-9802-CC-00048 |
| | ) |
| VS. | ) CHESTER COUNTY |
| | ) |
| MICHAEL S. HOLMES, | ) HON. FRANKLIN MURCHISON, |
| | ) JUDGE |
| Appellant. | ) |
| | ) (Aggravated Robbery, Aggravated |
| | Assault, Aggravated Kidnapping, |
| | Felony Escape, Theft of Property) |

**FOR THE APPELLANT:**

**C. MICHAEL ROBBINS (on appeal)**
46 North Third Street, Suite 719
Memphis, TN 38103

**GEORGE MORTON GOOGE (at trial)**
District Public Defender

**MICHAEL D. RASNAKE (at trial)**
**DANIEL J. TAYLOR**
Assistant District Public Defenders
227 West Baltimore Street
Jackson, TN 38301-6137

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**ELIZABETH T. RYAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JAMES G. (JERRY) WOODALL**
District Attorney General

**DONALD H. ALLEN**
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302-2825

OPINION FILED: _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

## OPINION

On March 5, 1997, a Chester County jury found defendant guilty of Aggravated Robbery, Aggravated Assault, Aggravated Kidnapping, Felony Escape, Burglary of a Vehicle, and Theft of Property Over $1,000.[1] The trial court sentenced the defendant to an effective twenty-year sentence on the subject charges, to run consecutively to both a prior Shelby County sentence and a thirty-year federal sentence. The defendant raises three issues on appeal:

> (1)     the defendant's multiple convictions for aggravated robbery, aggravated assault, aggravated kidnapping, escape and theft of property violate double jeopardy;
>
> (2)     the State of Tennessee lacked jurisdiction to try the defendant for escape from the Chester County Jail since he was being held there on federal charges; and
>
> (3)     the defendant's sentence is excessive.

This court concludes there is no double jeopardy violation; the State of Tennessee properly prosecuted defendant for escape; and the sentence is proper. The judgment and sentence imposed by the trial court is AFFIRMED.

## FACTS

Defendant, Michael S. Holmes, was a federal prisoner housed at the Chester County jail pursuant to a contract with the United States Marshal Service. He was convicted on federal drug charges in February of 1995 and was awaiting sentencing on those charges. At approximately 12:15 a.m. on January 4, 1996, he and another prisoner, Sherman Sanders, executed an escape plan.

The jailer, Shane Hesselrode, was lured into the hallway near defendant's cell to assist a maximum security prisoner who allegedly needed medical attention.

---

[1] A charge of attempted first degree murder was dismissed pre-trial by the state. The vehicular burglary charge was dismissed by the trial court at the hearing of defendant's motion for new trial.

2

Hesselrode opened the door to the entry hall and observed defendant and Sanders exit their cells. Sanders placed a home-made knife, described as a "shank," at the jailer's back and ordered him to enter the cell and drop his keys.

Simultaneously, defendant went to the dispatcher's office where Barbara Paulman was on duty. He rushed at her and threw her out of her chair onto the concrete floor. She struggled with defendant as he dragged her along the floor to the jail cell while jabbing at her with a "shank." By the time they reached the cell, her blouse and bra were completely torn, and the zipper was ripped out of her pants. The dispatcher suffered bruising, a large knot on her head, and a serious shoulder injury as a result of defendant's actions.

After locking Hesselrode and Paulman in the jail cell, defendant and Sanders made their way out of the jail area and out of the building. It was later discovered they took Paulman's keys from her purse and absconded with her car.

Defendant was convicted of aggravated robbery of Hesselrode's jail keys, aggravated assault and aggravated kidnapping of Paulman, felony escape, and theft of Paulman's vehicle.

Prior to the trial on these state charges, defendant pled guilty in federal court to the offense of escape arising from these incidents.

## I. MULTIPLE CONVICTIONS / DOUBLE JEOPARDY

Defendant asserts that the aggravated robbery, aggravated assault, aggravated kidnapping, escape and theft should be viewed as a single criminal episode with a single criminal intent: the intent to escape. As such, the defendant argues the multiple convictions violate the principle of double jeopardy.

State v. Denton, 938 S.W.2d 373 (Tenn. 1996), outlines the proper test for evaluating a double jeopardy claim. To determine whether multiple convictions are permitted we must: (1) conduct a Blockburger analysis of the statutory offenses; (2) analyze the evidence used to prove the offenses; (3) consider whether there were

3

multiple victims or discrete acts; and (4) compare the purposes of the respective statutes. Denton, 938 S.W.2d at 381.

Under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), one must determine whether each offense requires proof of an additional fact which the other does not. All five of the subject offenses require proof of additional facts not included in each of the other offenses.

The same evidence was not used to establish each offense. Hesselrode was the victim of the aggravated robbery and Paulman was the victim of the aggravated assault, aggravated kidnapping and theft. Distinct acts were committed in the course of each offense.

Finally, a comparison of the statutes' purposes shows that each offense protects a different interest. Theft is a property offense; escape, an offense against the administration of government. Aggravated robbery, aggravated assault, and aggravated kidnapping are all offenses against the person; however, they too have elements that distinguish them from one another. Further, they are in different parts of the criminal code which reflects a legislative intent that they be considered distinct offenses.

If this court were to accredit the defendant's argument, we would reach an untenable result. Effectively, Tennessee would be prohibited from prosecuting any criminal act, no matter how heinous, committed in the course of an inmate's escape other than the escape itself.

Defendant's multiple convictions do not violate double jeopardy under Denton. The multiple convictions are proper.


## II.  JURISDICTION OVER ESCAPE


Defendant was housed in the Chester County jail pursuant to a contract with

4

the U.S. Marshal while he awaited sentencing in federal court. Defendant argues that because of his status as a federal prisoner, the State of Tennessee lacked jurisdiction to prosecute him for escape from the Chester County jail. In support of this argument, defendant cites a number of federal cases.[2] He contends these cases hold that a federal prisoner, on escape from a state facility, cannot be tried in state court for escape. The rationale, defendant argues, is that he is in the U.S. Attorney General's custody and not state custody.

## A. Double Jeopardy

The facts and legal posture of the instant case are distinguishable from those cases relied upon by the defendant. The issue in the federal cases was whether a defendant could be prosecuted under the federal escape statute. The cases did not specifically address the *state's* right to prosecute those prisoners under its own laws pursuant to the principle of dual sovereignty.

The long-standing doctrine regarding prosecution by dual sovereignties is expressed in United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). "[A] federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one . . . [P]rosecutions under the laws of separate sovereigns do not . . . subject [the defendant] for the same offence to be twice put in jeopardy.'" United States v. Wheeler, 435 U.S. at 317, 98 S.Ct. at 1082-83, 55 L.Ed.2d at 308-9. Tennessee courts specifically uphold and adhere to this doctrine. *See*, *e.g.*, Lavon v. State, 586 S.W.2d 112, 113-14 (Tenn. 1979); State v. Crabtree, 655 S.W.2d 173, 177 (Tenn. Crim. App. 1983).

Both the United States and the State of Tennessee have established the criminal offense of "escape." As the United States and the State of Tennessee are

---

[2]United States v. Depew, 977 F.2d 1412 (10th Cir. 1992); United States v. Eaglin, 571 F.2d 1069 (9th Cir. 1977); United States v. Stead, 528 F.2d 257 (8th Cir. 1975); United States v. Hobson, 519 F.2d 765 (9th Cir. 1975); Credille v. United States, 354 F.2d 652 (10th Cir. 1965).

5

clearly separate sovereigns, each has a right to prosecute an individual whose actions constitute "escape" under its definition. The fact that a defendant is prosecuted and convicted under both such laws is of no consequence with regard to double jeopardy. See Bartkus v. Illinois, 359 U.S. 121, 131-32, 79 S.Ct. 676, 682, 3 L.Ed.2d 684, 691-92 (1959).

## B. Tennessee Escape Statute

Having disposed of any double jeopardy claim, we must evaluate the scope of the Tennessee escape statute. Particularly, we must determine whether the legislature intended it to encompass the escape of a federal prisoner held in a state institution solely on federal charges.

In evaluating the statute, it "must be construed so as to ascertain and give effect to the intent and purpose of the legislation considering the statute as a whole and giving words their common meaning. The Court should assume that the legislature used each word in the statute purposely and that the use of these words conveyed some intent." State v. Levandowski, 955 S.W.2d 603, 604 (Tenn. 1997)(citations omitted).

To this end, we look to the natural and ordinary language of the Tennessee escape statute which provides that "[i]t is unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution." Tenn. Code Ann. § 39-16-605(a). Stemming from this provision, we note the following definitions:

(1)     "Penal institution" is defined as "any institution or facility used to house or detain a person . . . convicted of a crime." Tenn. Code Ann. § 39-16-601(4)(A);

(2)     "Escape" is defined as "unauthorized departure from custody." Tenn. Code Ann. § 39-16-601(3); and

(3)      "Custody" is defined as "under arrest by a law enforcement officer or under restraint by a public servant pursuant to an order of a court." Tenn. Code Ann. § 39-16-601(2).

It is noteworthy that nowhere within the statute is there an explicit

6

requirement that custody be for a *state* offense.  Nor is there any indication that a prisoner's status should be relevant to the escape inquiry.  In fact, the statute is phrased in generic terms which tend to negate that very suggestion.  It encompasses a person convicted of "an offense," *not* "a state offense."  It requires custody to be pursuant to the order of "a court," *not* "a state court."

Defendant was convicted in February 1995 on drug charges in U.S. District Court, Western District of Tennessee.  He was held in the Chester County jail to await sentencing on that case.  On January 4, 1996, he departed from the restraint of the Chester County jailer without authorization to do so.

In sum, defendant was a person convicted of an offense who escaped from a penal institution pursuant to Tenn. Code Ann. §39-16-605.  He was subject to the jurisdiction of the Tennessee courts, and his prosecution and conviction in accordance with that section was entirely proper.

This issue has no merit.

### III.  SENTENCING

The trial court sentenced defendant to a total of twenty years on these charges.  It ran the first three sentences (consisting of the aggravated robbery, aggravated assault and aggravated kidnapping) concurrent; the remaining sentences (consisting of the escape and theft) concurrent; and each set consecutive to the other.  The trial court additionally ordered the effective twenty-year sentence in this case served consecutively to both a prior Shelby County conviction and defendant's thirty-year federal sentence.

Defendant makes no specific assignments of error with regard to the trial court's findings in reaching this decision.  Nevertheless, he maintains the twenty-year sentence imposed in this case is excessive.  Defendant bases this assertion on the fact that his federal sentence was enhanced as a result of the Chester

County misconduct.[3]

Our review of the sentence imposed by the trial court is <u>de novo</u>, with a presumption that the determinations of the trial court are correct. Tenn. Code Ann. § 40-35-401(d); <u>State v. Byrd</u>, 861 S.W.2d 377, 379 (Tenn. Crim. App. 1993). The presumption of correctness which attaches to the trial court's action is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

## A. Length of Sentence

The trial court in this instance made a careful, studied evaluation of the circumstances surrounding these convictions. It appropriately considered: (1) evidence at the trial and the sentencing hearing; (2) the pre-sentence report and addendums; (3) principles of sentencing and arguments for alternatives; (4) the nature and characteristics of the crime; (5) aggravating or mitigating factors; and (6) the statement of the defendant. *See* Tenn. Code Ann. § 40-35-210.

After establishing the proper sentencing range for each conviction, the trial judge identified, articulated, and applied multiple enhancement factors. He found no mitigating factors applicable. As a result, a maximum sentence was set for each offense.

Without any assignment of error by the defendant regarding the manner or results of these findings, we see no need to disturb the length of these sentences.

## B. Consecutive Sentencing

A court may order multiple sentences to run consecutively if the court finds by a preponderance of the evidence that the defendant is a professional criminal, an offender whose record of criminal activity is extensive, a dangerous offender with little or no regard for human life, or sentenced for an offense committed while on

---

[3]At sentencing in U.S. District Court, defendant's mandatory minimum sentence under federal guidelines was enhanced from 262 months to 360 months.

8

probation. Tenn. Code Ann. § 40-35-115(b)(1), (2), (4), (6); *see also* State v. Black, 924 S.W.2d 912 (Tenn. Crim. App. 1995). Furthermore, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. Crim. App. 1995).

## 1. T.C.A. / Wilkerson

The trial court in this case made clear and careful findings in the course of deciding which of defendant's terms would be concurrent and which consecutive. Specifically, it found the existence of four statutory factors that weighed in favor of running defendant's sentences consecutively: (1) defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood; (2) defendant has an extensive record of criminal activity; (3) defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; and (4) defendant was sentenced for an offense committed while on probation.[4] *See* Tenn. Code Ann. § 40-35-115 (1),(2),(4),(6).

Although the court did not specifically identify the Wilkerson considerations in its decision, our *de novo* review indicates that the consecutive sentences are, in fact, reasonably related to the severity of the offenses and serve to protect the public from further criminal conduct by this defendant. An effective sentence of twenty years for aggravated robbery, aggravated assault, aggravated kidnapping, escape, and theft of property also comports with the general principles of sentencing. Accordingly, the consecutive sentences were properly imposed by the trial court.

_____

[4]Defendant was *technically* on probation at the time of these offenses but, obviously, not on release in the community. Nevertheless, the misapplication of this factor does not invalidate consecutive sentencing in view of the other factors.

## 2. Rules of Criminal Procedure

The trial court noted Tennessee Rule of Criminal Procedure 32 in the course of its sentencing determinations. Rule 32(c)(3)(B) states that mandatory consecutive sentencing applies "to a sentence for escape or for a felony committed while on escape." This was a proper consideration in this case.

Our review of this issue reveals that T.R.Cr.P. 32(c)(2) is also relevant. "If the defendant has additional sentences or portions thereof to serve, as the result of conviction in other states or in federal court, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders." T.R.Cr.P. 32(c)(2). There has been no such showing of good cause which would dictate that the sentences in this case run concurrently with the federal sentence. The trial judge did not find any, nor do we. The consecutive sentencing, both with respect to the state and federal convictions, is proper and shall not be disturbed.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

10

_____
**PAUL G. SUMMERS, JUDGE**


_____
**DAVID H. WELLES, JUDGE**