IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001

## LARRY WADE v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 96-D-1952     Seth Norman, Judge**

---

### No. M2000-01260-CCA-R3-PC - Filed August 30, 2001

---

The petitioner, Larry Wade, appeals the denial of his petition for post-conviction relief by the Criminal Court for Davidson County. He asserts that the ineffective assistance of counsel and the unknowing and involuntary nature of his guilty pleas entitle him to relief from his convictions of attempted second degree murder and possession of one-half gram or more of cocaine with intent to sell. Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ. joined.

Rayburn McGowan, Jr., Nashville, Tennessee, for the appellant, Larry Wade.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Lisa Naylor and James W. Milam, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

#### I. Factual Background

On March 6, 1997, the petitioner, Larry Wade, pled guilty in the Davidson County Criminal Court to one count of attempted second degree murder and one count of possession of one-half gram or more of cocaine with intent to sell. At the guilty plea submission hearing, the prosecutor described the factual basis underlying the petitioner's pleas:

> If this matter went to trial the State's witnesses would be present and
> their testimony would show that on February the 6th of 1996, Officers
> Charles Williams and Anita Ross were working undercover for the
> Metro Crime Suppression Unit and they were doing that in the area

of Third Avenue South and Mallory Street, a location here in Davidson County.

As Officer Williams, who was driving, proceeded down Third Avenue South, another car blew the horn at him. The officer backed up to see who it was. It was a car occupied by a male, who he would identify as Larry Wade, and a female who was with Mr. Wade.

Mr. Wade asked the officer what he was looking for, to which Mr. Williams responded he needed a good thirty.

After a brief conversation an exchange was made of a small quantity of cocaine for thirty dollars.

At that point Officer Williams gave the signal to other undercover officers in the area to arrest Mr. Wade. One of those officers was William McCall.

Officer McCall and Officer Donelson attempted then to effect the arrest, at which point Mr. Wade, who was armed with a twenty-five caliber semi-automatic, raised the weapon, pointed it in the direction of Officer McCall, and the witnesses would testify he attempted to pull the trigger.

At this point the officer yelled for him to drop the gun and Mr. Wade turned and fled.

He was apprehended. The weapon was recovered.

In the pursuit of Mr. Wade, Mr. Wade dropped a brown piece of paper that contained some rock-like substance. That was recovered and later tested and found to be cocaine of at least twenty-five grams.

Also, there was some money recovered from Mr. Wade's person.

At the time of his guilty pleas, the petitioner was eighteen years old and facing charges of one count of attempted first degree murder, one count of sale of less than one-half gram of cocaine, one count of possession of one-half gram or more of cocaine with intent to sell, one count of evading arrest, one count of resisting arrest, and one count of criminal impersonation. The transcript of the guilty plea submission hearing reflects that, in return for the petitioner's pleas of guilt to attempted second degree murder and possession of cocaine with intent to sell, the State agreed to the dismissal of the remaining charges and also agreed to recommend concurrent sentences of twelve years incarceration in the Tennessee Department of Correction. Additionally, the transcript

reflects that, in return for the petitioner's pleas in state court, federal authorities agreed to forego prosecution of the petitioner in federal court on charges relating to his possession of cocaine and a gun.

Prior to accepting the petitioner's guilty pleas, the trial court obtained confirmation from the petitioner that he was not suffering from any mental illness or under the influence of any drug. The trial court then reviewed with the petitioner the charges pending against him and the accompanying potential sentences. Moreover, the trial court ascertained that the petitioner had fully discussed his proposed guilty pleas with his attorney and was otherwise satisfied with his attorney's representation. At the trial court's request, the petitioner also acknowledged his signature on a written petition to enter his guilty pleas and confirmed that he had signed the petition freely and voluntarily. Finally, the trial court advised the petitioner of his constitutional rights and obtained assurances from the petitioner that he understood those rights. Consequently, the trial court accepted the petitioner's guilty pleas, approving the sentencing recommendation of the State and imposing concurrent sentences of twelve years incarceration in the Tennessee Department of Correction.

Following his convictions, the petitioner evidently wrote a letter to his attorney in which he expressed his dissatisfaction with the disposition of his case. In a letter dated December 10, 1997, his counsel responded:

> I take great offense to your letter of December 8. Please write the Court and ask to withdraw your guilty plea. I will save this letter and advise the Court that you obviously did not understand your situation, and I am sure you will be allowed to withdraw your plea.
>
> Once you are serving your sentence in the Federal Penitentiary, you will realize that whoever has given you this bad advice is stupid.

The record contains no motion by the petitioner to withdraw his guilty pleas pursuant to Tenn. R. Crim. P. 32(f). However, on March 11, 1998,[1] the petitioner challenged his convictions by filing a petition for post-conviction relief. The petitioner alleged in essence that he received ineffective assistance of counsel and that his guilty pleas were neither knowing nor voluntary. The post-conviction court appointed counsel and conducted an evidentiary hearing on September 16, 1998. The sole evidence presented by the petitioner at the hearing comprised his own testimony.

The petitioner testified that, at the time of his offenses, he was seventeen years old and had attended high school through the eleventh grade. At the recommendation of a family member, he retained Attorney Glenn Funk to represent him in this case. Funk represented the petitioner both at a transfer hearing in juvenile court and at his guilty plea submission hearing. According to the petitioner, he met with Funk approximately two or three times for the purpose of

---

[1] The State filed a motion in the post-conviction court to dismiss the petition for post-conviction relief due to the expiration of the applicable statute of limitations. However, in response, the petitioner submitted proof that the petition was "postmarked for filing on March 5, 1998," in compliance with Tenn. Sup. Ct. Rule 28, § 2(G).

discussing his case. The petitioner recalled that, during these meetings, he consistently denied to Funk that he ever pointed his gun at a police officer or attempted to fire his gun on February 6, 1996, and he provided Funk with a list of witnesses who would be able to corroborate his version of events on that day. The petitioner further noted that the police officers' testimonies at the transfer hearing concerning the charge of attempted first degree murder were conflicting. He complained that Funk nevertheless neglected to interview the witnesses identified by him.

The petitioner further asserted that, instead of investigating his case, Funk informed him two or three weeks prior to the submission hearing that federal authorities intended to arrest him for charges relating to his possession of cocaine and a gun on February 6, 1996. Funk advised the petitioner that he would be wise to avoid prosecution in federal court as the potential sentences were far greater than those he would face in criminal proceedings in the Davidson County Criminal Court. According to the petitioner, he only agreed to enter the guilty pleas currently at issue due to his attorney's advice and his consequent fear of federal prosecution. The petitioner explained, "I didn't have a choice. I wanted to go to trial, [Funk] wouldn't let me. He told me it was not possible to go to trial." As to the petitioner's assurances to the trial court at the submission hearing that his guilty pleas were voluntary, the petitioner asserted that he was "coached to come in and go through the process."

Following the petitioner's testimony, the State presented the testimony of Glenn Funk, the petitioner's former attorney. Like the petitioner, Funk testified that he represented the petitioner in this case both at the transfer hearing in juvenile court and at the guilty plea submission hearing. In contrast to the petitioner, Funk recalled that he met with the petitioner on approximately six to eight occasions during the course of his representation. According to Funk, the petitioner did not contest his participation in the drug sale on February 6, 1996, or his possession of both cocaine and a gun on that day, but he did deny attempting to shoot a police officer. Funk confirmed that the petitioner provided him with a list of witnesses who might be able to corroborate the petitioner's version of events. Funk also confirmed that, at the transfer hearing, there were inconsistencies in the testimonies of several officers concerning the charge of attempted first degree murder. Specifically, Funk testified:

> The two male officers, Officer Williams and Officer McCall, both placed Mr. Wade as doing that act. And then Officer Ross who, due to the rule was out in the hallway, did indicate that Mr. Wade was in a position where he couldn't have done that.
>
> I mean, there was some inconsistency, he is correct about that. And all along I had told him that was a triable case, especially if he could get me some witnesses that would say that.

Funk conceded that he could not recall whether or not he interviewed the witnesses identified by the petitioner. He also conceded that he did not listen to an audio tape recording of the alleged drug sale. He explained, however, that his investigation of the petitioner's case was interrupted when an Assistant United States Attorney informed him that a federal grand jury would

indict the petitioner in approximately one week due to the petitioner's possession of cocaine and a gun on February 6, 1996. Funk recalled:

> I think Mr. Wade was looking at a minimum fifteen year sentence if he didn't cooperate with the government. Fifteen years in federal time would have taken him about twelve to do. And that was a minimum situation.
>
> And that was without pointing the gun and firing it, just having the gun and possessing the crack, which we kind of were in a position where we had to concede. And his witnesses weren't talking about that.

Accordingly, Funk engaged in plea negotiations with the prosecutor handling the petitioner's case in state court. As a result of these negotiations, the prosecutor and the Assistant United States Attorney offered the plea agreement that was ultimately accepted by the petitioner.

Funk testified that he fully discussed the plea agreement with the petitioner, including reviewing the federal sentencing guidelines with the petitioner. Funk recalled that he and the petitioner "had some pretty long discussions, including on the day of the plea." Following these discussions, the petitioner stated to Funk, "[O]kay, I'm trusting you and I'm going with this." Funk stated his belief that the petitioner's guilty pleas were both knowing and voluntary. Funk concluded, "I thought I got a better deal for Larry Wade than I had gotten for anybody all year."

At the conclusion of Funk's testimony, petitioner's post-conviction counsel noted his agreement with Funk that a federal prosecution would have resulted in a lengthier sentence than that currently being served by the petitioner. The post-conviction court noted in turn that "this is an absolute classic example of plea bargaining. It's a classic example." The court concluded that the petitioner was afforded effective representation of counsel and that the petitioner's guilty pleas were knowing and voluntary.

## II. Analysis

The petitioner was required at the post-conviction evidentiary hearing to prove the factual allegations in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn. 2000)(quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Moreover, on appeal, the post-conviction court's factual findings are binding upon this court unless the evidence preponderates otherwise. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). "In evaluating whether the evidence preponderates against the [post-conviction] court's findings, we are guided by longstanding rules of appellate procedure." Henley, 960 S.W.2d at 578. Thus, questions concerning the credibility of witnesses and the weight and value of their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court will not re-weigh or reevaluate the evidence or substitute its

inferences for those of the post-conviction court. Owens v. State, 13 S.W.3d 742, 749 (Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn.), cert. denied, 531 U.S. 846, 121 S. Ct. 116 (2000). That having been said, this court reviews de novo the post-conviction court's resolution of questions of law and mixed questions of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

### A.    Ineffective Assistance of Counsel

The petitioner contends in this appeal, as in the court below, that his guilty pleas were the result of ineffective assistance of counsel. In order to establish ineffective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, a petitioner must demonstrate that (1) his counsel's representation was deficient and that (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see also Burns, 6 S.W.3d at 461; Henley, 960 S.W.2d at 579; Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). Reviewing courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. Burns, 6 S.W.3d at 461; Henley, 960 S.W.2d at 580.

In order to demonstrate that his counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-688; 104 S. Ct. at 2064-2065; see also Burns, 6 S.W.3d at 462. In Tennessee, our supreme court has interpreted this test to require a showing that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In applying this test, this court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, this court should defer to such decisions if they are based upon adequate preparation. Burger v. Kemp, 483 U.S. 776, 794-795, 107 S. Ct. 3114, 3126 (1987); see also Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Terry Lee Charlton v. State, No. M1998-00087-CCA-MR3-PC, 2000 WL 127278, at *3 (Tenn. Crim. App. at Nashville, February 4, 2000), perm. to appeal denied, (Tenn. 2000).

Ultimately, the primary concern of the court should be the fundamental fairness of the trial court proceedings. State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Thus, as previously noted, a petitioner must establish prejudicial, as opposed to merely deficient, performance by trial counsel. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 579. In the context of a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694; 104 S. Ct. at 2068.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. Burns, 6 S.W.3d at 461. Thus, while the post-conviction

-6-

court's factual findings are entitled to a presumption of correctness unless the evidence preponderates otherwise, this court should conduct a "purely de novo review" of the post-conviction court's "application of law to those factual findings to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency." Fields v. State, 40 S.W.3d 450, 457-458 (Tenn. 2001). Applying this standard, we decline to disturb the conclusion of the post-conviction court that the petitioner received effective assistance of counsel.

The petitioner grounds his complaint of ineffective assistance of counsel on his attorney's recommendation that he plead guilty to attempted second degree murder and possession of cocaine with intent to sell in order to avoid federal prosecution for charges relating to his possession of cocaine and a gun and the consequent risk of a greater sentence. Specifically, the petitioner asserts that, prior to advising him to plead guilty, his attorney (1) failed to interview witnesses identified by the petitioner as capable of corroborating his version of the facts underlying the State's charge of attempted first degree murder; (2) failed to listen to an audio tape recording of the alleged drug sale; and (3) failed to ascertain the total amount of drugs seized by police from the petitioner.

Preliminarily, this court has previously cited with approval the United States Supreme Court's observation that the expectation or hope of a lesser sentence is a consideration that might suggest the advisability of a guilty plea. See Henry Eugene Hodges v. State, No M1999-00516-CCA-R3-PD, 2000 WL 1562865, at *20 (Tenn. Crim. App. at Nashville, October 20, 2000), perm. to appeal denied, (Tenn. 2001)(citing United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392 (1976), and Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463 (1970)). Indeed, we have acknowledged that such calculations are the very heart of plea bargaining:

> Plea agreements are often called "plea bargains," and this term is indicative of the nature of such agreements. As a general proposition, a plea agreement is a bargained-for exchange between the state and the defendant. In exchange for the defendant's plea of guilty, the state often agrees to drop additional charges, to reduce the charge to which the defendant is to plead guilty, and/or to agree to a sentencing structure that is more favorable than the defendant might otherwise expect. In exchange for the state's concession(s), the defendant may agree to accept a conviction and/or sentence which is different than that which he might have received had the charge(s) proceeded to trial.

William Boyd v. State, No. E1999-02179-CCA-R3-PC, 2000 WL 1661526, at *5 (Tenn. Crim. App. at Knoxville, November 6, 2000)(citations omitted); see also State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). As noted by the post-conviction court, the petitioner's attorney in this case was engaged in "classic" plea bargaining. In essence, Funk calculated that the petitioner's best interests would be served by pleading guilty in state court to possession of cocaine with intent to sell and attempted second degree murder and receiving concurrent sentences of twelve years incarceration rather than by proceeding to trial in state court on all the charged offenses and also facing federal prosecution for charges that related to the petitioner's possession of cocaine and a gun and entailed

a minimum sentence of fifteen years incarceration. See, e.g., State v. Holmes, 995 S.W.2d 135, 139 (Tenn. Crim. App. 1998).

As noted earlier, this court need only defer to tactical and strategic decisions by defense counsel if they are based upon adequate preparation. Burger, 483 U.S. at 794-795, 107 S. Ct. at 3126. Addressing the petitioner's allegations of inadequate preparation, we note that the record is devoid of evidence that Funk was unaware of the total amount of drugs seized by police from the petitioner or that Funk was otherwise unable to calculate the potential consequences of a federal prosecution.[2] The record does reflect Funk's possible failure to interview witnesses identified by the petitioner and his failure to listen to an audio tape recording of the alleged drug sale. However, in assessing Funk's calculation of the petitioner's best interests and his consequent advice to the petitioner to plead guilty, we must keep in mind that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690-691, 104 S. Ct. at 2066; see also Harris v. State, 947 S.W.2d 156, 165 (Tenn. Crim. App. 1996). Applying a heavy measure of deference to counsel's judgment in this case, we must conclude that Funk's decision to forego interviewing the witnesses identified by the petitioner and listening to the audio tape recording of the alleged drug sale prior to advising the petitioner to plead guilty was reasonable under all the circumstances of this case.

With respect to Funk's failure to interview the witnesses identified by the petitioner, the record reflects that Funk was nevertheless aware of the existence of the witnesses and their potential value in defending the petitioner against the charge of attempted first degree murder. Indeed, as noted earlier, Funk informed the petitioner that the attempted first degree murder prosecution was a "triable case." In contrast, however, the record reflects that the petitioner never disputed his possession of and sale of cocaine, nor did he ever dispute his possession of a gun. Accordingly, regardless of the disposition of the attempted first degree murder charge in state court,

---

[2]In his brief on appeal, the petitioner notes Funk's failure to object to the prosecutor's statement at the submission hearing that police seized at least twenty-five grams of cocaine from the petitioner. He asserts that "the record provided in this matter shows a total weight of 5.0 grams of cocaine in [the petitioner's possession]." The petitioner, however, does not follow this assertion with any citation to the record, and we have been unable to locate any proof in the record contradicting the prosecutor's statement concerning the amount of drugs seized by police from the petitioner. Moreover, as noted earlier, petitioner's post-conviction counsel conceded at the post-conviction evidentiary hearing that a successful federal prosecution would have subjected the petitioner to a greater sentence than the sentence afforded by the petitioner's guilty pleas.

the petitioner faced a significant likelihood of conviction in federal court of charges that related to his possession of cocaine and a gun and entailed a minimum sentence of fifteen years incarceration. In other words, even had Funk interviewed the witnesses identified by the petitioner and confirmed their corroboration of the petitioner's version of events occurring on February 6, 1996, this additional investigation would not have diminished the benefit of the plea agreement offered by the State.

As to Funk's failure to listen to the audio tape recording of the alleged drug sale, the record reflects that the petitioner described to Funk the events that occurred on February 6, 1996. Again, the petitioner never denied his sale of cocaine to the officers, his possession of the drugs seized by police during his attempted flight, or his possession of a gun. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . ., counsel's failure to pursue those investigations may not later be challenged as unreasonable." Burger, 483 U.S. at 795, 107 S. Ct. at 3126; see also Harris, 947 S.W.2d at 167. In this regard, we are unconvinced by the petitioner's argument that "the inconsistency of the testimony shown by the police officers at the time of the transfer hearing foreshadow[ed] inevitable problems which might arise in the prosecution of this case by Federal authorities." It was undisputed at the post-conviction evidentiary hearing that inconsistencies in the police officers' testimonies at the transfer hearing solely related to the petitioner's guilt or innocence of attempted first degree murder.

Additionally, even assuming that Funk's performance was not within the range of competence demanded of attorneys in criminal cases, the petitioner failed to present at the post-conviction evidentiary hearing the testimony of the witnesses whom Funk failed to interview. "The failure to present such witnesses precludes this court and the post-conviction court from making a determination of how the petitioner was prejudiced . . . ." State v. James E. Gordon, No. M2000-02435-CCA-R3-PC, 2001 WL 844404, at *4 (Tenn. Crim. App. at Nashville, July 26, 2001); see also Black, 794 S.W.2d at 757-758 ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Similarly, the petitioner's failure to include the audio tape recording of the drug sale in the record before this court precludes any determination of prejudice. This issue is without merit.

### B.    Knowing and Voluntary Nature of Petitioner's Guilty Pleas

In a related argument, the petitioner also asserts that his guilty pleas were neither knowing nor voluntary. In order to pass constitutional muster, an accused's guilty plea must be entered voluntarily, knowingly, and understandingly. Parke v. Raley, 506 U.S. 20, 28-29, 113 S. Ct. 517, 523 (1992); Boykin v. Alabama, 395 U.S. 238, 242-244, 89 S. Ct. 1709, 1711-1713 (1969); see also Blankenship v. State, 858 S.W.2d 897, 904-905 (Tenn. 1993); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In other words, a guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). Thus, a defendant must possess a sufficient awareness of the relevant circumstances and likely consequences of his plea. Brady, 397 U.S. at 748, 90 S. Ct. at 1469. Conversely, "the plea cannot be . . . the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or]

subtle or blatant threats.'" State v. Wilson, 31 S.W.3d 189, 195 (Tenn. 2000)(alterations in original).

The determination of whether a guilty plea was entered voluntarily, knowingly, and understandingly depends upon a court's consideration of "all of the relevant circumstances that existed at the entry of the plea." Hicks, 983 S.W.2d at 247. Relevant circumstances include the trial court's compliance with procedures mandated by Boykin, 395 U.S. at 242-244, 89 S. Ct. at 1711-1713, Mackey, 553 S.W.2d at 341, State v. McClintock, 732 S.W.2d 268, 273 (Tenn. 1987), and Tenn. R. Crim. P. 11. Hicks, 983 S.W.2d at 247; see also Bates v. State, 973 S.W.2d 615, 624-625 (Tenn. Crim. App. 1997); Michael E. Waldron v. State, No. M2000-00772-CCA-R3-PC, 2001 WL 589173, at *10 (Tenn. Crim. App. at Nashville, June 1, 2001). For example, a trial court's failure to establish a factual basis for the plea on the record may contribute to the totality of the circumstances reflecting an unknowing and involuntary plea. Powers, 942 S.W.2d at 555. More broadly, a reviewing court should consider

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904. Again, on appeal, this court is bound by the post-conviction court's conclusions to the extent that they are supported by a preponderance of the evidence contained in the record and do not entail the application of the law to factual findings. Burns, 6 S.W.3d at 461. In this case, the record substantiates the post-conviction court's conclusion that the petitioner entered his guilty pleas knowingly and voluntarily.

The petitioner primarily grounds his claim that his guilty pleas were unknowing and involuntary on his claim of ineffective assistance of counsel. This court has held that "[i]f [guilty] pleas were made in reasonable reliance upon the advice or representation of counsel, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary." Hodges, No M1999-00516-CCA-R3-PD, 2000 WL 1562865, at *19. However, we have already concluded that petitioner's counsel rendered effective representation. Nevertheless, the petitioner cites his attorney's December 10, 1997 letter in which Funk informed the petitioner that, if he filed a motion to withdraw his guilty pleas, Funk would "advise the Court that you obviously did not understand your situation." However, as also acknowledged by the petitioner, Funk testified at the post-conviction evidentiary hearing that he believed the petitioner's guilty pleas to be both knowing and voluntary. The post-conviction court was entitled to accredit Funk's testimony at the evidentiary hearing in lieu of a somewhat ambiguous statement included in a hastily and angrily written letter, and the totality of circumstances in this case corroborates Funk's testimony.

In closing, we note the petitioner's assertion at the post-conviction evidentiary hearing that he "didn't have a choice." In this regard, we have previously observed that "[t]he statement, 'I have no choice,' may . . . well mean that, after considering the options before him, the petitioner

concluded that the only intelligent choice was to plead guilty." <u>Hicks</u>, 983 S.W.2d at 248.  In fact, on appeal, the petitioner elucidates:

> [Petitioner] argues that he had no choice but to plead guilty to attempted second degree murder.  It was the [petitioner]'s understanding that this would have to be done in order to avoid [federal] prosecution . . . .

The record reflects that the petitioner's understanding was correct.  "However, the entry of a guilty plea to avoid the risk of greater punishment does not make a plea involuntary." <u>Alphonso Bradford v. State</u>, No. M1998-00078-CCA-MR3-PC, 2000 WL 549278, at *6 (Tenn. Crim. App. at Nashville, May 5, 2000), <u>perm. to appeal denied</u>, (Tenn. 2000); <u>see also</u> <u>Hicks</u>, 983 S.W.2d at 248.  This issue is without merit.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE